Henry J. BAGROWSKI, Plaintiff,

v.

**AMERICAN EXPORT ISBRANDTSEN LINES, INC., Defendant and Third Party Plaintiff-Appellant,**

v.

**CITY OF MILWAUKEE, Third Party Defendant-Appellee.**

No. 18204.

United States Court of Appeals, Seventh Circuit.

March 10, 1971.

Harney B. Stover, Davis, Kuelthau, Vergeront & Stover, S. C., Milwaukee, Wis., and John W. McMurray, Bradley, Eaton, Jackman & McGovern, Chicago, Ill., for defendant and third party plaintiff-appellant.

John J. Fleming, City Atty., Herbert F. Sonnenberg, Asst. City Atty., Milwaukee, Wis., for third-party defendant-appellee.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

HASTINGS, Senior Cricuit Judge.

We are concerned here with a third-party complaint for indemnity in an action in admiralty. This matter arises out of the following proceedings in the federal district court.

American Export Isbrandtsen Lines, Inc., on July 7, 1966, was the owner and operator of the Steamship Flying Spray. Henry J. Bagrowski was employed as a longshoreman aboard the Flying Spray at the Port of Milwaukee, Wisconsin, the stevedore-employee of the City of Milwaukee. While so employed Bagrowski went aboard the Flying Spray, which was moored at the public dock at Milwaukee, together with other longshoremen employees of the City, to perform stevedoring operations aboard the ship. In the course of such employment at that time, he was allegedly injured when he stepped on a timber which gave way causing him to fall to the bottom of the ship's hold. Thereafter, he was paid benefits by the City under the Wisconsin Workmen's Compensation Act, Wis.Stat., Chapter 102.

About a year after the accident, Bagrowski brought an action in admiralty against American Export for damages for his injuries so received, charging they were due to the negligence of American Export and its employees and the unseaworthiness of the steamship. After unsuccessfully tendering its defense to the City of Milwaukee and answering the complaint, American Export filed the subject third-party action against the City of Milwaukee, as the stevedore-employer of Bagrowski. It sought indemnification for alleged breach of implied warranty of workmanlike service running from the City to American Export as part of the stevedoring contract. The City answered and discovery was undertaken. The third-party action was commenced pursuant to a stipulation by the parties and an order of approval by the trial court. The City thereupon filed its motion to dismiss the third-party action against it on the ground, *inter alia,* that it had paid workmen's compensation benefits to Bagrowski, and that pursuant to Section 102.03(2) of the Wisconsin Act[1] such payment was the exclusive remedy against the employer.

In a written memorandum decision and order, D.C., 305 F.Supp. 432, the district court granted the City's motion to dismiss the third-party action. American Export appealed the order of dismissal. Subsequently, a settlement was negotiated between Bagrowski and American Export in the principal action, following which such action was dismissed by the trial court, without prejudice to American Export's right to indemnification, contribution or other relief against the City. Thus, there remains for our sole consideration on appeal the dismissal of the third-party action by the district court.

I

■ It is well settled under federal maritime law that a shipowner owes a duty to longshoremen working in or

1. Wis.Stat. Section 102.03(2) provides: "Where such conditions exist the right to the recovery of compensation pursuant to this chapter [102] shall be the *exclusive* *remedy* against the employer and the workmen's compensation insurance carrier." (Emphasis added.)

about the shipowner's vessel to provide them with a safe and seaworthy vessel. This fundamental rule was established in Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), where the Court answered affirmatively the question stated by Mr. Justice Rutledge, in speaking for the majority, at page 89, 66 S.Ct. at page 875: "The nub of real controversy lies in the question whether the shipowner's obligation of seaworthiness extends to longshoremen injured while doing the ship's work aboard but employed by an independent stevedoring contractor whom the owner has hired to load or unload the ship." [2] So here, if Bagrowski's injuries were caused by the alleged unseaworthiness of the vessel, he would be entitled to recover from American Export for its breach of duty to provide him with a safe and seaworthy vessel in which to work.

## II

Since the decision by a divided Supreme Court in Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), another fundamental rule of general maritime law seems firmly established and widely cited, followed and expanded. *Ryan* was concerned with an action against a shipowner for damages arising from injuries sustained by a longshoreman while unloading the shipowner's vessel. Recovery was sought on the grounds that the ship was unseaworthy and that the shipowner had neglected to provide him with a safe place to work. The shipowner filed a third-party complaint against the longshoreman's stevedore-employer for indemnification. In answering two questions held dispositive of the appeal, the majority held (1) that the Longshoremen's and Harbor Workers' Compensation Act, Title 33, U.S.C.A. § 905, did not preclude the assertion by a shipowner of a stevedoring contractor's liability to it, where the contractor is also the employer of the injured longshoreman [3]; and (2) that in the absence of an express agreement of indemnity, a stevedoring contractor is obligated to reimburse a shipowner for damages caused it by the contractor's improper stowage of cargo. [4]

■ From the foregoing it can be said that *Ryan* has fashioned a rule that every stevedoring contract contains *an implied warranty running from the stevedore-employer to the shipowner* that the stevedoring operations will be

2. *Accord*, Moragne v. States Marine Lines, 398 U.S. 375, 399, 90 S.Ct. 1772, 26 L.Ed. 2d 339 (1970); Federal Marine Terminals, Inc. v. Burnside Shipping Co., Ltd., 394 U.S. 404, 415, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969); Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 632, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

3. In *Ryan, supra*, at 131–132, 76 S.Ct. at 236, on this question the Court said: "The shipowner's action here is not founded upon a tort or upon any duty which the stevedoring contractor owes to its employee. The third-party complaint is grounded upon the contractor's breach of its purely consensual obligation *owing to the shipowner* to stow the cargo in a reasonably safe manner. Accordingly, the shipowner's action for indemnity on that basis is not barred by the Compensation Act."

4. In *Ryan, supra*, at 133–135, 76 S.Ct. at 236, on this question the Court said: "The shipowner here holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place when the cargo in question was loaded. That agreement necessarily includes petitioner's obligation * * to stow the * * * [cargo] properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. This obligation * * is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service * * *. Whatever may have been the respective obligations of the stevedoring contractor and of the shipowner to the injured longshoreman for proper storage of the cargo, it is clear that, as between themselves, the contractor, as the warrantor of its own services, cannot use the shipowner's failure to discover and correct the contractor's own breach of warranty as a defense."

performed in a safe and workmanlike manner.

The Supreme Court enlarged and strengthened the vitality of *Ryan* in Waterman Steamship Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960), where, at page 423, 81 S.Ct. at page 201 it said:

"In Ryan [Stevedoring] Co. v. Pan-Atlantic [Steamship] Corp., 350 U.S. 124, [76 S.Ct. 232, 100 L.Ed. 133] it was established that a stevedoring contractor who enters into a service agreement with a shipowner is liable to indemnify the owner for damages sustained as a result of the stevedore's breach of his warranty to perform the obligations of the contract with reasonable safety. This warranty of workmanlike service extends to the handling of cargo, as in *Ryan*, as well as to the use of equipment incidental to cargo handling, as in Weyerhaeuser S. S. Co. v. Nacirema [Operating] Co., 355 U.S. 563, [78 S.Ct. 438, 2 L.Ed.2d 491]. The warranty may be breached when the stevedore's negligence does no more than call into play the vessel's unseaworthiness. Crumady v. The J. H. Fisser, 358 U.S. 423, 429, [79 S.Ct. 445, 3 L.Ed.2d 413]. The factual allegations of the third-party complaint in the present case comprehend the latter situation."

The Court held in *Waterman* that the absence of a contractual relationship between the parties is not fatal to the indemnity claim of the shipowner against the stevedore-employer, there being:

"* * * no difference in principle, so far as the stevedore's duty to indemnify the shipowner is concerned, whether the stevedore is engaged by an operator to whom the owner has chartered the vessel or by the consignee of the cargo. * * * The ship and its owner are equally liable for a breach by the contractor of the own-er's nondelegable duty to provide a seaworthy vessel. * * * The owner, no less than the ship, is the beneficiary of the stevedore's warranty of workmanlike service." *Id.* at 424–425, 81 S.Ct. at 202.

In Italia Soc. per Azione v. Ore. Stevedoring Co., Inc., 376 U.S. 315, 318, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964), a majority of the Court again paid tribute to Ryan v. Pan-Atlantic Corp., *supra*, as the landmark decision in this area, and held that the shipowner may recover indemnity from a stevedore for breach of implied warranty of workmanlike service where the stevedore, *without negligence*, has supplied defective equipment which injures its own employee who has recovered a judgment against the shipowner on the basis of unseaworthiness. This opinion sets out a rather complete review of *Ryan's* progeny.

It thus becomes clear to us in the instant case that, if Bagrowski's injuries were caused by the unseaworthiness of the Flying Spray which in turn was caused by or brought into play by a breach of the City's implied warranty of workmanlike service, absent conduct on the part of American Export sufficient to preclude recovery,[5] then American Export has a right to full indemnification from the City for any recovery against it by Bagrowski or paid to him in settlement of his personal injury claim.

### III

The learned district court in its memorandum decision and order found that the Wisconsin Supreme Court had expressly held the City of Milwaukee to be a political subdivision of the State of Wisconsin, citing Wauwatosa v. Milwaukee, 266 Wis. 59, 62 N.W.2d 718 (1954), where at page 65, 62 N.W.2d at page 721 the court said, in referring to the City of Milwaukee: "Municipal corpora-

5. Weyerhaeuser S. S. Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); Drago v. A/S Inger, 2 Cir., 305 F.2d 139, 142 (1962), Daniels & Kennedy Inc. v. A/S Inger, cert. denied, 371 U.S. 925, 83 S.Ct. 292, 9 L.Ed.2d 232.

tions are considered to be arms of the state established by authority of the legislature for the purpose of administration of certain affairs of government."

The district court reasoned that federal law is not applicable here because of the provisions of the Longshoremen's and Harbor Workers' Compensation Act, *supra*, wherein § 903(a) (2) provides:

"(a) * * * No compensation shall be payable in respect of the disability or death of—

* * *

(2) An officer or employee of the United States or any agency thereof or of any State or foreign government, or of any political subdivision thereof."

From this the district court concluded that the "exclusive remedy" provision in § 102.03(2) of the Wisconsin Workmen's Compensation Act, *supra*, in the absence of an express agreement for indemnification by the employer, provides the sole liability of an employer because of an injury to an employee in the course of his employment. This position finds support in two holdings of the Wisconsin Supreme Court, one of which is cited and relied upon by the district court, Grede Foundries, Inc. v. Price Erecting Co., 38 Wis.2d 502, 157 N.W.2d 559 (1968).

In Engel v. Bindel, 27 Wis.2d 456, 134 N.W.2d 404 (1965), the court recognized its own established exclusive remedy rule under the Wisconsin Act, but also recognized that it did not apply to an employer in case of an express agreement for indemnification. However, in *Engel* there was no express contract to indemnify and the Wisconsin Supreme Court, with Justice Fairchild dissenting, declined to extend the common-law obligation of indemnity to *implied* contracts. *Id.* at page 460, 134 N.W.2d 404.

In Grede Foundries, Inc. v. Price Erecting Co., *supra*, the issue was whether the legislative policy which limits an employer's liability to that provided under workmen's compensation, extends to actions for implied indemnifi-

cation by third parties based on an employer's breach of contract. The court held the rule in *Engel* to be controlling. *Id.* 38 Wis.2d at pages 506–507, 157 N. W.2d 559. In *Grede Foundries*, the court considered the rationale of Ryan Co. v. Pan-Atlantic Corp., *supra*. Although finding the principles set forth in *Ryan* to be persuasive, it declined to accept the interpretation of a federal statute as controlling its own interpretation of a Wisconsin statute.

The district court here relied upon *Grede Foundries* when it held "that there can be no implied indemnification exception to the statutory [Wisconsin] rule," and accordingly dismissed the third-party action against the City of Milwaukee. In this, we have concluded the district court erred.

Although neither of the foregoing Wisconsin cases was a maritime action and in some respects could be distinguished from the case at bar, we prefer to reserve further comment and reach the broader question of federal supremacy.

### IV

◼ As a general proposition, it may be said that federal power is dominant in the maritime field and states may not deprive a party of a federally created maritime right. The majority declared for another divided court in Southern Pacific Co. v. Jensen, 244 U.S. 205, 217, 37 S.Ct. 524, 529, 61 L.Ed. 1086 (1917):

"The work of a stevedore in which the deceased was engaging is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction. [Citation omitted.]

"If New York can subject foreign ships coming into her ports to such obligations as those imposed by her Compensation Statute, other States may do likewise. The necessary con-

sequence would be destruction of the very uniformity in respect to maritime matters which the Constitution was designed to establish; and freedom of navigation between the States and with foreign countries would be seriously hampered and impeded. * * * "

Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), was a case in which a plaintiff carpenter, employed by an independent contractor, was injured while working on a ship berthed on navigable waters in Pennsylvania. He slipped and fell through an uncovered hatch hole on the vessel. He brought a diversity civil action for damages in the federal district court against the shipowner, alleging negligence and the ship's unseaworthiness. The shipowner pleaded contributory negligence as a defense and brought in the contractor as a third-party defendant, alleging that the injury resulted from the contractor's negligence and claiming recovery over against the contractor by way of contribution or indemnity. The Supreme Court affirmed plaintiff's judgment against the shipowner and denied the shipowner's claim for contribution.

*Pope & Talbot* is of particular interest in our present consideration of the supremacy doctrine where the Court held that since plaintiff was injured on navigable waters while working on a ship, the basis of his action was a maritime tort and his rights were not to be determined by Pennsylvania law. On this proposition Mr. Justice Black, speaking for the majority, said:

"Nor can we agree that Hawn's rights must be determined by the law of Pennsylvania, under which, it is said, any contributory negligence would bar all recovery in this personal injury action. True, Hawn was hurt inside Pennsylvania and ordinarily his rights would be determined by Pennsylvania law. But he was injured on navigable waters while working on a ship to enable it to complete its loading for safer transportation of its cargo by water. Consequently, the basis

of Hawn's action is a maritime tort, a type of action which the Constitution has placed under national power to control in 'its substantive as well as its procedural features. * * *' Panama R. Co. v. Johnson, 264 U.S. 375, 386, [44 S.Ct. 391, 393, 68 L.Ed. 748]. And Hawn's complaint asserted no claim created by or arising out of Pennsylvania law. His right of recovery for unseaworthiness and negligence is rooted in federal maritime law. Even if Hawn were seeking to enforce a state created remedy for this right, federal maritime law would be controlling. While states may sometimes supplement federal maritime policies, a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretative decisions of this Court. These principles have been frequently declared and we adhere to them. See e. g., Garrett v. Moore-McCormack Co., 317 U.S. 239, 243–246, [63 S.Ct. 246, 249–251, 87 L.Ed. 239], and cases there cited. Caldarola v. Eckert, 332 U.S. 155, [67 S.Ct. 1569, 91 L.Ed. 1968], does not support the contention that a state which undertakes to enforce federally created maritime rights can dilute claims fashioned by federal power, which is dominant in this field." (Footnotes omitted.) *Id.* at 409–410, 74 S.Ct. at 205.

The precise issue in the case at bar is whether the Wisconsin Workmen's Compensation Act may preclude recovery by the shipowner for indemnification for breach of implied warranty by the stevedore-contractor in the foregoing factual situation. Conversely stated, is federal maritime law controlling as opposed to a state-created remedy, an exclusive remedy under state Compensation Act? This question has not yet been considered by the Supreme Court or this circuit. However, this issue and some analogous thereto have been treated by other federal circuit and district courts.

The Second Circuit has handed down three cases that materially point the

way in considering the primacy of federal maritime law governing implied indemnity agreements. A/S J. Ludwig Mowinckels Rederi v. Commercial Steve. Co., 2 Cir., 256 F.2d 227, 229–231 (1958), held that indemnity provisions of a maritime contract are governed by admiralty rules and not by state court rules. Specifically, the court ruled that under an indemnity clause providing that a stevedoring company should be responsible for any and all damages for injury to persons while loading or unloading any ship, the shipowner was entitled to indemnification from the stevedoring company, which was guilty of negligence, for amounts paid to the employee of the stevedoring company in settlement of his action for personal injuries sustained while unloading the owner's ship, even though the owner's negligence contributed to the injury. In Booth Steamship Co. v. Meier & Oelhaf Co., 2 Cir., 262 F.2d 310, 312–313 (1958), the court held that federal maritime law governs implied terms of agreements of independent contractors to do repair work on vessels. Again, in Crosson v. N. V. Stoomvaart MIJ "Nederland", 2 Cir., 409 F.2d 865, 866 (1969), the court reiterated the general policy that a shipowner's indemnity action against a stevedore is a creature of maritime law, judicially fashioned and carefully matured, citing *Ryan, Crumady* and *Weyerhaeuser, supra.* In the first two of the New York cases the district court had erroneously applied New York law in dismissing the indemnity actions, requiring reversals. In the third case, the district court's rejection of New York law denying recovery of costs and attorney fees was affirmed.

Coming closer to the case at bar are two decisions by the Third Circuit. In Hagans v. Ellerman & Bucknall Steamship Company, 3 Cir., 318 F.2d 563, 580–583 (1963), the court held that the fact that a longshoreman, injured while unloading cargo from a vessel, received benefits under a state Workmen's Compensation Law did not preclude his seeking recovery for the injuries from the vessel owner, even though the longshoreman's employer might have been liable to the vessel owner by way of indemnity. In United New York Sandy Hook Pilots Ass'n v. Rodermond Indus., Inc., 3 Cir., 394 F.2d 65, 69–71 (1968), in an extended and well considered opinion the court held, *inter alia*, in an indemnity action by a shipowner *against contractors* for recovery of monies the owner *paid to the* estate of a deceased employee of a contractor who died from poisoning contracted while working on the shipowner's vessel, that the shipowner was entitled to such indemnity. The court reversed the holding of the district court that because the deceased longshoreman's widow had been paid compensation under the New York Workmen's Compensation Law, the "exclusivity provisions" of that Act precluded her action for unseaworthiness, as did the statute of limitations in the state wrongful death act. The court ruled that the action was governed by federal maritime law and not by New Jersey law.

In Feliciano v. Compania Trasatlantica Espanola, S. A., 1 Cir., 411 F.2d 976 (1969), the First Circuit considered a case which appears about in point. A suit was brought to recover damages against a shipowner for the loss of a longshoreman who died as the result of an accident that occurred aboard ship. The shipowner impleaded the stevedoring contractor and its insurer as third-party defendants, seeking *indemnity* in the amount of any judgment obtained against it in the principal action. The district court granted summary judgment and dismissed the third-party complaint on the ground that the stevedoring company was an insured employer under the Workmen's Compensation Act of Puerto Rico and as such, the exclusive remedy against it was the compensation provided in that Act. On appeal, the court reversed, holding that the right to indemnity by the shipowner was grounded in contract, and not in tort, and was governed by federal maritime

law and could not be cut off by the Puerto Rican Act.

In Koninklyke Nederlandsche, etc. v. Strachan Shipping Co., 5 Cir., 301 F.2d 741, 744–745 (1962), the Fifth Circuit held that payments made by a stevedoring company under the Texas Workmen's Compensation Act to a longshoreman, who was employed by it and who was injured while helping to load a ship, would not prevent the shipowner from maintaining a third-party complaint against the stevedoring company for indemnity for any recovery obtained by the longshoreman in an action against the shipowner for injuries, on the ground of breach of implied warranty by the stevedoring contractor to perform its services for the shipowner in a workmanlike fashion. See also, McCross v. Ratnakar Shipping Co., D.C., D.Md., 265 F.Supp. 827 (1967).

Undergirding the rationale of the foregoing decisions is the provision in the Federal Constitution concerning admiralty and maritime jurisdiction of the courts in Article 3, Section 2, Clause 1, which reads in relevant part: "Section 2. The Judicial Power shall extend * * * to all Cases of admiralty and maritime Jurisdiction; * * *." Further, a reading of these decisions makes clear the controlling influence of Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) and the sweep of the law emanating therefrom. We find them controlling here in reaching the "exclusive remedy" provision in § 102.03 of the Wisconsin Workmen's Compensation Act, *supra*.

■ In view of the foregoing, it becomes clear to us that in the instant case the "exclusive remedy" provision in the Wisconsin Act cannot bar American Export from asserting its right to indemnification under federal maritime law against the City of Milwaukee in its capacity as a stevedore-employer, even though Bagrowski, the injured longshoreman-employee of the City, received compensation under the Wisconsin Act.

## V

■■ The defendant-appellee City of Milwaukee, for the first time in this proceeding, on brief and in oral argument urges affirmance of the dismissal of the third-party complaint on the ground of its sovereign immunity. This proposition was not passed upon or considered by the district court and there is no showing it was urged in the hearing below. Aside from this, in view of our conclusion on the federal supremacy issue here, and for a variety of other reasons, we find the contenton to be without merit. Adams v. Harris County, Texas, D.C., S.D.Tex., 316 F.Supp. 938, 946–950 (1970); N. M. Paterson & Sons, Limited v. City of Chicago, D.C., N.D.Ill., E.D., 176 F.Supp. 323 (1959). Simply because the City of Milwaukee as a municipal corporation is an arm of the State of Wisconsin, it does not follow that in the exercise of a proprietary function it has governmental immunity from liability for injuries occasioned by its negligence. *Cf.*, Holytz v. Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618 (1962). See Wis.Stats., § 895.43.

The order of the district court dismissing the third-party action against the City of Milwaukee is reversed. This cause is ordered remanded to the district court for further proceedings not inconsistent with this opinion.

Reversed and Remanded.